IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB

        Plaintiffs,

        v.                           CIVIL ACTION NO. _2:12-3412___

ALEX ENERGY, INC., ARACOMA COAL
CO., INC., BANDMILL COAL CORP.,
HIGHLAND MINING CO.,
INDEPENDENCE COAL CO., INC.,
JACKS BRANCH COAL CO., and
KANAWHA ENERGY CO.,

        Defendant.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES**

**INTRODUCTION**

1.     This is an action for declaratory judgment and mandatory injunctive relief and for civil penalties against Defendants for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA"), and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq.  (hereinafter "SMCRA").

2.     As detailed below, Plaintiffs allege that Defendants discharged and continue to discharge selenium—a pollutant designated as toxic by the U.S. Environmental Protection Agency, 40 C.F.R. § 401.15—into waters of the United States in persistent violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, and of the conditions and limitations of nine West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permits issued to

1

Defendants by the State of West Virginia pursuant to Section 402 of the Clean Water Act.

3.      Plaintiffs further allege that Defendants' discharges of unlawful quantities of selenium into the waters adjacent to their mine sites violate the performance standards under SMCRA and the terms and conditions of their surface mining permits.

## JURISDICTION AND VENUE

4.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (Clean Water Act citizen suit provision), and 30 U.S.C. § 1270 (SMCRA citizen suit provision).

5.      On April 23, 2012, Plaintiffs gave notice of the violations and their intent to file suit to Defendants, the United States Environmental Protection Agency ("EPA"), the United States Department of Interior, the Office of Surface Mining, Reclamation, and Enforcement ("OSMRE"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)(A).

6.      More than sixty days have passed since notice was served.  EPA, OSMRE, and/or WVDEP have not commenced and/or diligently prosecuted a civil or criminal action to redress the violations.  Moreover, neither EPA nor WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the violations prior to the issuance of the April 23, 2012 notice letter.

7.      Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District, and pursuant to 30 U.S.C. § 1270(c) because the coal mining operations complained of are located in this District.

## PARTIES

2

8.     Alex Energy, Inc. ("Alex Energy"), is a West Virginia corporation doing business in, among other places, Logan County, West Virginia.

9.     Alex Energy is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

10.     At all relevant times, Alex Energy has owned and operated the Whitman No. 2 Surface Mine in Logan County, West Virginia, which is regulated by Surface Mining Permit S505389 and which discharges pollutants from various outfalls that are subject to the effluent limitations and terms and conditions of WV/NPDES Permit WV1008277.

11.     Aracoma Coal Company, Inc. ("Aracoma"), is a West Virginia Corporation doing business in, among other places, Logan County, West Virginia.

12.     Aracoma is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. 1291(19).

13.     At all relevant time, Aracoma owned and operated the Pine Fork Slurry Impoundment and Ethel Hollow Preparation Plant (Surface Mining Permit No. O502090), the Ethel Hollow Surface Mine (Surface Mining Permit No. S501390), the Stockton No. 1 Deep Mine (Surface Mining Permit No. U501191), and the Princess Aracoma Deep Mine (Surface Mining Permit No. U502190), and which discharge pollutants from various outfalls that are subject to the effluent limitations and terms and conditions of WV/NPDES Permit WV1010689.

14.     Bandmill Coal Corporation ("Bandmill") is a West Virginia Corporation doing business in, among other places, Logan County, West Virginia.

15.     Bandmill is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and and Section 701(19) of SMCRA, 30 U.S.C. 1291(19).

16.     At all relevant times, Bandmill owned and operated the Tower Mountain Surface Mine in Logan County, West Virginia, which is regulated by Surface Mining Permit S502393

and which discharges pollutants from various outfalls that are subject to the effluent limitations and terms and conditions of WV/NPDES Permit WV1015559.

17.    Highland Mining Company ("Highland") is a West Virginia Corporation doing business in, among other places, Logan County, West Virginia.

18.    Highland is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

19.    At all relevant times, Highland owned and operated the Freeze Fork Surface Mine (Surface Mining Permit S503096) and Freeze Fork Haulroad (Surface Mining Permit O500703) in Logan County, West Virginia, which discharge pollutants from various outfalls that are subject to the effluent limitations and terms and conditions of WV/NPDES Permit WV1016938.

20.    Independence Coal Company, Inc. ("Independence"), is a is a West Virginia corporation doing business in, among other places, Boone County, West Virginia.

21.    Independence is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

22.    At all relevant times, Independence owned and operated the Twilight MTR Surface Mine in Boone County, West Virginia, which is regulated by Surface Mining Permit S502396 and which discharges pollutants from various outfalls that are subject to the effluent limitations and the terms and conditions of WV/NPDES Permit WV1016890.

23.    Jacks Branch Coal Company ("Jacks Branch") is a West Virginia Corporation doing business in, among other places, Kanawha County, West Virginia.

24.    Jacks Branch is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

25.    At all relevant times, Jacks Branch owned and operated the Lady Dunn Preparation Plant Complex in Kanawha County, West Virginia, which is regulated by Surface

Mining Permits O007582, S007085, S008883, S012782, and S600866 and which discharges pollutants from various outfalls that are subject to the effluent limitations and terms and conditions of WV/NDPES Permit WV0093929.

26.    At all relevant times, Jacks Branch owned and operated the Hughes Creek Surface Mine in Kanawha County, West Virginia, which is regulated by Surface Mining Permit S301491 and which discharges pollutants from various outfalls that are subject to the effluent limitations and terms and conditions of WV/NPDES Permit WV0097217.

27.    At all relevant times, Jacks Branch owned and operated the Stockton Mine in Kanawha County, West Virginia, which is regulated by Surface Mining Permit U304291 and which discharges pollutants from various outfalls that are subject to the effluent limitations and terms and conditions of WV/NPDES Permit WV1012452.

28.    Kanawha Energy Company ("Kanawha Energy") is a West Virginia Corporation doing business in, among other places, Fayette County, West Virginia.

29.    Kanawha Energy is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

30.    At all relevant times, Kanawha Energy owned and operated the Fourmile Fork Surface Mine in Fayette County, West Virginia, which is regulated by Surface Mining Permit S300296 and which discharges pollutants from various outfalls that are subject to the effluent limitations and terms and conditions of WV/NPDES Permit WV1015176.

31.    Plaintiff Ohio Valley Environmental Coalition (hereinafter "OVEC") is a nonprofit organization incorporated in Ohio.  Its principal place of business is in Huntington, West Virginia.  It has approximately 1,500 members.  Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership

development, and media outreach.  OVEC has focused on water quality issues and is a leading

source of information about water pollution in West Virginia.

32.     Plaintiff West Virginia Highlands Conservancy, Inc., (hereinafter "WVHC") is a

nonprofit organization incorporated in West Virginia.  It has approximately 2,000 members.  It

works for the conservation and wise management of West Virginia's natural resources.

33.     Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with

more than 600,000 members and supporters nationwide and approximately 1,900 members who

reside in West Virginia and belong to its West Virginia Chapter.  The Sierra Club is dedicated to

exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the

responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to

protect and restore the quality of the natural and human environment; and to using all lawful

means to carry out these objectives.  The Sierra Club's concerns encompass the exploration,

enjoyment and protection of surface waters in West Virginia.

34.     Plaintiffs' members suffer injuries to their aesthetic, recreational, environmental,

and/or economic interests as a result of Defendants' unlawful discharges of selenium.  Plaintiffs'

members fish, swim, observe wildlife, hike near, observe wildlife in, photograph, and/or

otherwise use the waters affected by Defendants' discharges and are harmed by the high levels of

selenium that Defendants are discharging in violation of their permits.  Plaintiffs' members

refrain from those activities and/or enjoy them less because of Defendants' unlawful discharges.

Plaintiffs' members are also very concerned about the impacts of pollution from Defendants'

discharges on their friends and neighbors and on local wildlife.  If Defendants' unlawful

discharges ceased, the harm to the interests of Plaintiffs' members could be redressed.

Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing

and/or deterring future violations of the limits in and conditions of Defendants' permits.

35.     At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5), and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

### *Clean Water Act*

36.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

37.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

38.     Section 402 of the CWA, 33 U.S.C. § 1342, directs the Administrator of EPA to prescribe conditions for NPDES permits to ensure compliance with the requirements of the CWA, including conditions on data and information collection, reporting, and other such requirements as the Administrator deems appropriate.

39.     Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents of wastewater discharges.  Effluent limitations are among the conditions and limitations prescribed in NPDES permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

40.     Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies

that will protect the designated uses of the water.  When technology-based effluent limitations are insufficient to keep receiving waters within those levels, the permit must include stricter water quality based effluent limits ("WQBELs") that reflect water quality standards and criteria. 33 U.S.C. § 1311(b)(1)(C).

41.     At all times relevant to this complaint, the State of West Virginia has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of West Virginia.  Permits issued under this program are known as "WV/NPDES" permits.

42.     Holders of WV/NPDES Permits are required to monitor their discharges and report their average monthly discharges and maximum daily discharges on a quarterly basis. Those reports are called "Discharge Monitoring Reports," or "DMRs."

43.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."

44.     Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA, a WQBEL, and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

45.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d).  See 33 U.S.C. § 1365(a).

8

46.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

47.     Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009. See 40 C.F.R. § 19.4.

48.     Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

### *Surface Mining Control and Reclamation Act*

49.     Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from the Office of Surface Mining Reclamation and Enforcement ("OSMRE") or from an approved state regulatory authority.

50.     At all relevant times, the State of West Virginia has administered an approved surface mining regulatory program. See 30 C.F.R. § 948.10.

51.     The legislative rules promulgated under the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA") provide that, as a general condition of all surface mining permits issued under the WVSCMRA, the permittee must comply with all applicable performance standards. 38 C.S.R. § 2-3.33.c.

52.     Among the performance standards mandated by SMCRA and the WVSCMRA is that mining activities must be conducted in such a manner so as to "prevent material damage to

the hydrologic balance outside the permit area." 30 C.F.R. §§ 816.41(a) & 817.41(a); 38 C.S.R.

§ 2-14.5.

53.     Another performance standard mandated by SMCRA and the WVSCMRA is that

"[d]ischarge from areas disturbed by . . .  mining shall not violate effluent limitations or cause a

violation of applicable water quality standards." 30 C.F.R. §§ 816.42 & 817.42; 38 C.S.R. § 2-

14.5.b.

54.     SMCRA and the WVSCMRA also include a performance standard requiring that

"[if] drainage control, restabilization and revegetation of disturbed areas, diversion of runoff,

mulching, or other reclamation and remedial practices are not adequate to meet the requirements

of this section and § 816.42, the operator shall use and maintain the necessary water-treatment

facilities or water quality controls." 30 C.F.R. § 816.41(d)(1); see also 38 C.S.R. § 2–14.5.c

("Adequate facilities shall be installed, operated and maintained using the best technology

currently available in accordance with the approved preplan to treat any water discharged from

the permit area so that it complies with the requirements of subdivision 14.5.b of this

subsection.").

55.     Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), authorizes any person adversely

affected to bring an action in federal court to compel compliance with SMCRA against any

"person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant

to [SMCRA]."

56.     Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), authorizes the Court to award

the costs of litigation, including attorney fees and expert witness fees, "to any party, whenever

the court determines such an award is appropriate."

57.     WVDEP is the agency in the State of West Virginia that administers that State's

CWA and SMCRA programs, and issues WV/NPDES Permits and WVSCMRA Permits.

**FACTS**

***WV/NPDES Permit WV1008277***

58.     At all relevant times, Alex Energy has held WV/NPDES Permit WV1008277 to regulate water pollution from its Whitman No. 2 Surface Mine.

59.     At all relevant times, Alex Energy has held WVSCMRA Permit S505389 for its Whitman No. 2 Surface Mine.

60.     Outfall 001 regulated by WV/NPDES Permit WV1008277 discharges into an unnamed tributary of Newsome Branch of the Guyandotte River.  Outfall 003 regulated by WV/NPDES Permit WV1008277 discharges into Trace Fork of the Guyandotte River.  All of those waterways are navigable waters of the United States.

61.     WV/NPDES Permit WV1008277 includes a condition that "[t]he discharge or discharges covered by [this] WV/NPDES permit are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2."  47 C.S.R. § 30-5.1(f).

62.     West Virginia has established specific numeric water quality standards for selenium in order to protect the biological integrity of streams and to maintain aquatic life. Those standards include a chronic criterion of 5 µg/l and an acute criterion of 20 µg/l for selenium.

63.     Reports submitted by Alex Energy under the terms of WV/NPDES Permit WV1008277 reveal that Alex Energy has discharged selenium from Outfalls 001 and 003 regulated by WV/NPDES Permit WV1008277 in amounts that violate water quality standards and, thus, the condition in its permit prohibiting discharges that violate those standards.

64.     Appendix A to this Complaint sets forth the instances where Alex Energy has reported selenium concentrations at Outfalls 001 and 003 that exceed the numeric selenium

water quality criteria.

65.     Those data indicate that Alex Energy's discharges have caused violations of the chronic and/or acute selenium water quality standards on multiple occasions between April 1, 2007, and March 31, 2012.

66.     On the basis of Alex Energy's pattern of violations of discharging excess selenium from Outfalls 001 and 003 regulated by WV/NDPES Permit Number WV1008277 and the absence of any evidence of any meaningful efforts by Alex Energy to eradicate the cause of the violations, Plaintiffs allege that Alex Energy is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

### *WV/NPDES Permit WV1010689*

67.     At all relevant times, Aracoma has held WV/NPDES Permit WV1010689 to regulate water pollution from its Piney Fork Slurry Impoundment and Ethel Preparation Plant, its Ethel Hollow Surface Mine, its Stockton #1 Deep Mine, and its Princess Aracoma Deep Mine.

68.     At all relevant times, Aracoma has held WVSCMRA Permit O502090 for its Piney Fork Slurry Impoundment and Ethel Hollow Preparation Plant.

69.     At all relevant times, Aracoma has held WVSCMRA Permit S501390 for its Ethel Hollow Surface Mine.

70.     At all relevant times, Aracoma has held WVSCMRA Permit U501191 for its Stockton #1 Deep Mine.

71.     At all relevant times Aracoma has held WVSCMRA Permit U502190 for its Princess Aracoma Deep Mine.

72.     Outfalls 001, 009, 023, 024, 037, 038, and 052 regulated by WV/NPDES Permit WV1010689 discharge into Camp Branch of Dingess Run of the Guyandotte River.

73.     Outfalls 002 and 036 regulated by WV/NPDES Permit WV1010689 discharge

into one or more unnamed tributaries of Dingess Run of the Guyandotte River.

74.     Outfalls 005, 006, 006, 008, and 044 regulated by WV/NPDES Permit WV1010689 discharge into Dingess Run of the Guyandotte River.

75.     Outfall 029 regulated by WV/NPDES Permit WV1010689 discharges into Ethel Hollow of Dingess Run of the Guyandotte River.

76.     Outfall 053 regulated by WV/NPDES Permit WV1010689 discharges into Freeze Fork of the Guyandotte River.

77.     All of the waterways identified in Paragraphs 72, 73, 74, 75, and 76 are navigable waters of the United States.

78.     WV/NPDES Permit WV1010689 includes a condition that "[t]he discharge or discharges covered by [this] WV/NPDES permit are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2." 47 C.S.R. § 30-5.1(f).

79.     West Virginia has established specific numeric water quality standards for selenium in order to protect the biological integrity of streams and to maintain aquatic life. Those standards include a chronic criterion of 5 μg/l and an acute criterion of 20 μg/l for selenium.

80.     Data obtained by Sierra Club from (1) Aracoma's renewal application for WV/NPDES Permit WV1010689 and (2) WVDEP'S 2009 study of selenium and valley fills give Sierra Club a good faith basis to allege, on information and belief, that Aracoma has discharged selenium from Outfalls 001, 002, 005, 006, 007, 008, 009, 023, 024, 029, 036, 037, 038, 044, 052, and 053 into the receiving streams identified above in amounts that violate water quality standards and, thus, the condition in Aracoma's permit to refrain from discharges that violate those standards.

13

81.    Appendix B to this Complaint sets forth the instances where data reveal those violations.

82.    Those data indicate that Aracoma's discharges have caused violations of the chronic and/or acute selenium water quality standards on multiple occasions between October 2009 and May 2010.

83.    In the absence of any evidence that Aracoma has made any efforts to prevent future similar selenium-laden discharges from the Outfalls identified above, Plaintiffs allege that Aracoma is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

### *WV/NPDES Permit WV1015559*

84.    At all relevant times, Bandmill has held WV/NPDES Permit WV1015559 to regulate water pollution from its Tower Mountain Surface Mine.

85.    At all relevant times, Bandmill has held WVSCMRA Permit S502393 for its Tower Mountain Surface Mine.

86.    Outfall 001 regulated by WV/NPDES Permit WV1015559 discharges into Burgess Branch of the Guyandotte River.  Those waterways are navigable waters of the United States.

87.    WV/NPDES Permit WV1015559 includes a condition that "[t]he discharge or discharges covered by [this] WV/NPDES permit are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2." 47 C.S.R. § 30-5.1(f).

88.    West Virginia has established specific numeric water quality standards for selenium in order to protect the biological integrity of streams and to maintain aquatic life. Those standards include a chronic criterion of 5 µg/l and an acute criterion of 20 µg/l for selenium.

89.     On June 15, 2011, WVDEP's Watershed Assessment Branch sampled the water quality in Burgess Branch of the Guyandotte River.  That sampling effort revealed that the selenium concentration in Burgess Branch was 27.6 µg/L.

90.     The nearest upstream discharge point into Burgess Branch is Outfall 001 regulated by WV/NPDES Permit WV1015559.

91.     Accordingly, Bandmill's discharges from Outfall 001 caused an instream excursion from the acute selenium water quality standard in June 2011.

92.     In light of the nature of selenium discharges from surface mines and in the absence of any evidence that Bandmill has made any efforts to prevent future similar selenium-laden discharges from Outfall 001 of WV/NPDES Permit WV1015559, Plaintiffs allege that Bandmill has committed additional violations of its permit conditions at Outfall 001 since June 2011, and is in continuing and ongoing violation of the terms and conditions of WV/NPDES Permit WV1015559 and, hence, the Clean Water Act and SMCRA.

### *WV/NPDES Permit WV1016938*

93.     At all relevant times, Highland has held WV/NPDES Permit WV1016938 to regulate water pollution from its Freeze Fork Surface Mine and Freeze Fork Haulroad.

94.     At all relevant times, Highland has held WVSCMRA Permit S503096 for its Freeze Fork Surface Mine.

95.     At all relevant times, Highland has held WVSCMRA Permit O500703 for its Freeze Fork Haulroad.

96.     Outfalls 001 and 020 regulated by WV/NPDES Permit WV1016938 discharge into one or more unnamed tributaries of Freeze Fork of Dingess Run of the Guyandotte River. Outfall 019 regulated by WV/NPDES Permit WV1016938 discharges into Freeze Fork of Dingess Run of the Guyandotte River.  All of those waterways are navigable waters of the

United States.

97.     WV/NPDES Permit WV1016938 includes a condition that "[t]he discharge or discharges covered by [this] WV/NPDES permit are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2." 47 C.S.R. § 30-5.1(f).

98.     West Virginia has established specific numeric water quality standards for selenium in order to protect the biological integrity of streams and to maintain aquatic life. Those standards include a chronic criterion of 5 µg/l and an acute criterion of 20 µg/l for selenium.

99.     Reports submitted by Highland under the terms of WV/NPDES Permit WV1016938 reveal that Highalnd has discharged selenium from Outfalls 001, 019, and 020 in amounts that violate water quality standards and, thus, the condition in its permit prohibiting discharges that violate those standards.

100.    Appendix C to this Complaint sets forth the instances where Highland has reported selenium concentrations at Outfalls 001, 019, and 020 that exceed the numeric selenium water quality criteria.

101.    Those data indicate that Highland's discharges have caused violations of the chronic and/or acute selenium water quality standards in one or more unnamed tributaries of Freeze Fork and in Freeze Fork on multiple occasions between January 2006 and March 2012.

102.    On the basis of Highland's pattern of violations of discharging excess selenium from Outfalls 001, 019, and 020 regulated by WV/NDPES Permit Number WV1016398 and the absence of any evidence of any meaningful efforts by Highland to eradicate the cause of the violations, Plaintiffs allege that Highland is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

16

### *WV/NPDES Permit WV1016890*

103.    At all relevant times, Independence has held WV/NPDES Permit WV1016890 to regulate water pollution from its Twilight MTR Surface Mine.

104.    At all relevant times, Independence has held WVSCMRA Permit S502396 for its Twilight MTR Surface Mine.

105.    Outfall 004 regulated by WV/NPDES Permit WV1016890 discharges into Chimney Branch of Matts Creek of West Fork of Coal River.  Those waterways are navigable waters of the United States.

106.    WV/NPDES Permit WV1016890 includes a condition that "[t]he discharge or discharges covered by [this] WV/NPDES permit are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2."  47 C.S.R. § 30-5.1(f).

107.    West Virginia has established specific numeric water quality standards for selenium in order to protect the biological integrity of streams and to maintain aquatic life. Those standards include a chronic criterion of 5 μg/l and an acute criterion of 20 μg/l for selenium.

108.    Reports submitted by Independence under the terms of WV/NPDES Permit WV1016890 reveal that Independence has discharged selenium into Chimney Branch of Matts Creek of West Fork of Coal River from Outfall 004 regulated by WV/NPDES Permit WV1016890 in amounts that violate water quality standards and, thus, the condition in its permit prohibiting discharges that violate those standards.

109.    Appendix D to this Complaint sets forth the instances where Independence has reported selenium concentrations at Outfall 004 that exceed the numeric selenium water quality criteria.

110.    Those data indicate that Independence's discharges have caused violations of the chronic and/or acute selenium water quality standards on multiple occasions between January 24, 2012, and March 31, 2012.

111.    On the basis of Independence's pattern of violations of discharging excess selenium from Outfall 004 regulated by WV/NDPES Permit Number WV1016890 and the absence of any evidence of any meaningful efforts by Independence to eradicate the cause of the violations, Plaintiffs allege that Independence is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

### *WV/NPDES Permit WV0093929*

112.    At all relevant times, Jacks Branch has held WV/NPDES Permit Number WV0093929 to regulate water pollution from its Lady Dunn Preparation Plant Complex.

113.    At all relevant times, Jacks Branch has held WVSCMRA Permits O007582, S007085, S008883, S012782, and S600866 for its Lady Dunn Preparation Plant Complex.

114.    WV/NPDES Permit Number WV0093929 places limits on the concentrations of selenium that Jacks Branch can discharge into the Kanawha River from Outfall 004 and into Dunn Hollow of the Kanawha River from Outfalls 014 and 015.  Each of those waterways is a navigable water of the United States.

115.    Those limitations became effective on January 25, 2010, and limit the selenium concentration in Jacks Branch's discharge to 4.7 µg/l as a monthly average and 8.2 µg/l as a daily maximum.

116.    The DMRs that Jacks Branch submitted to WVDEP reveal that Jacks Branch has discharged selenium in excess of the final effluent limitations for selenium from Outfalls 001, 014, and 015.

117.    As outlined in the chart attached as Appendix E to this Complaint, Jacks Branch

violated the final effluent limitations on Outfalls 001, 014, and 015 of WV/NPDES Permit WV0093929 at least 63 times for a total of 920 days of violation between January 25, 2010, and March 31, 2012.

118.    On the basis of Jacks Branch's pattern of violations of its effluent limitations in WV/NDPES Permit Number WV0093929 and the absence of any evidence of any meaningful efforts by Jacks Branch to eradicate the cause of the violations, Plaintiffs allege that Jacks Branch is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

### *WV/NPDES Permit WV0097217*

119.    At all relevant times, Jacks Branch has held WV/NPDES Permit WV0097217 to regulate water pollution from its Hughes Creek Surface Mine.

120.    At all relevant times, Jacks Branch has held WVSCMRA Permit S301491 for its Hughes Creek Surface Mine.

121.    Outfall 005 regulated by WV/NPDES Permit WV0097217 discharges into Hughes Creek of the Kanawha River.  Those waterways are navigable waters of the United States.

122.    WV/NPDES Permit WV0097217 includes a condition that "[t]he discharge or discharges covered by [this] WV/NPDES permit are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2."  47 C.S.R. § 30-5.1(f).

123.    West Virginia has established specific numeric water quality standards for selenium in order to protect the biological integrity of streams and to maintain aquatic life. Those standards include a chronic criterion of 5 µg/l and an acute criterion of 20 µg/l for selenium.

124.    Reports submitted by Jacks Branch under the terms of WV/NPDES Permit

WV0097217 reveal that Jacks Branch has discharged selenium into Hughes Creek of the Kanawha River from Outfall 005 regulated by WV/NPDES Permit WV0097217 in amounts that violate water quality standards and, thus, the condition in its permit prohibiting discharges that violate those standards.

125.    Appendix F to this Complaint sets forth the instances where Jacks Branch has reported selenium concentrations at Outfall 005 that exceed the numeric selenium water quality criteria.

126.    Those data indicate that Jacks Branch's discharges have caused violations of the chronic selenium water quality standard on multiple occasions between December 1, 2007, and March 31, 2012.

127.    On the basis of Jacks Branch's pattern of violations of discharging excess selenium from Outfall 005 regulated by WV/NDPES Permit Number WV0097217 and the absence of any evidence of any meaningful efforts by Jacks Branch to eradicate the cause of the violations, Plaintiffs allege that Jacks Branch is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

### *WV/NPDES Permit WV1012452*

128.    At all relevant times, Jacks Branch has held WV/NPDES Permit Number WV1012452 to regulate water pollution from its Stockton Mine.

129.    At all relevant times, Jacks Branch has held WVSCMRA Permit U304291 for its Stockton Mine.

130.    Outfalls 001, 002, 009, and 011 regulated by WV/NPDES Permit WV1012452 discharge into Hughes Creek of the Kanawha River.

131.    Outfall 012 regulated by WV/NPDES Permit WV1012452 discharges into Shadrick Fork of Hughes Creek of the Kanawha River.

132.     Outfall 014 regulated by WV/NPDES Permit WV1012452 discharges into Hurricane Fork of Kelly's Creek of the Kanawha River.

133.     Outfall 015 regulated by WV/NPDES Permit WV1012452 discharges into Bells Creek of Twentymile Creek of the Gauley River.

134.     The waterways identified in Paragraphs 130, 131, 132, and 133 are navigable waters of the United States.

135.     Under the terms of WV/NPDES Permit WV1012452 and Order No. 2332, selenium effluent limitations on Outfalls 001, 002, 009, 011, 012, 014, and 015 went into effect on March 21, 2010.

136.     Order No. 2332 purports to modify WV/NPDES Permit WV1012452 to incorporate the final selenium compliance deadline of March 21, 2010.  Even if that were not so, Order No. 2332 is separately enforceable under the CWA citizen suit provision.  Order No. 2332 constitutes an "order issued by the Administrator or a State with respect to [effluent] standard[s] or limitation[s]" for purposes of Section 505(a)(1) of the Clean Water Act and, hence, violations of that compliance order are actionable in a Clean Water Act citizen suit.

137.     The selenium effluent limitations in WV/NPDES Permit WV1012452 limit the selenium concentration in Jacks Branch's discharge to 4.7 µg/l as a monthly average and 8.2 µg/l as a daily maximum.

138.     The DMRs that Jacks Branch submitted to WVDEP reveal that Jacks Branch has discharged selenium in excess of the final effluent limitations for selenium from Outfalls 001, 002, 009, 011, 012, 014, and 015.

139.     As outlined in the chart attached as Appendix G to this Complaint, Jacks Branch violated the final effluent limitations on Outfalls 001, 002, 009, 011, 012 014, and 015 of WV/NPDES Permit WV0093929 at least 139 times for a total of 1,788 days of violation between

March 21, 2010, and March 31, 2012.

140.    On the basis of Jacks Branch's pattern of violations of its effluent limitations in WV/NDPES Permit Number WV1012452 and the absence of any evidence of any meaningful efforts by Jacks Branch to eradicate the cause of the violations, Plaintiffs allege that Jacks Branch is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

### *WV/NPDES Permit WV1015176*

141.    At all relevant times, Kanawha Energy has held WV/NPDES Permit WV1015176 to regulate water pollution from its Fourmile Fork Surface Mine.

142.    At all relevant times, Kanawha Energy has held WVSCMRA Permit S300296 for its Fourmile Fork Surface Mine.

143.    Outfall 007 regulated by WV/NPDES Permit WV1015176 discharges into Fourmile Fork of Smithers Creek of the Kanawha River.  Those waterways are navigable waters of the United States.

144.    WV/NPDES Permit WV1015176 includes a condition that "[t]he discharge or discharges covered by [this] WV/NPDES permit are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2."  47 C.S.R. § 30-5.1(f).

145.    West Virginia has established specific numeric water quality standards for selenium in order to protect the biological integrity of streams and to maintain aquatic life. Those standards include a chronic criterion of 5 µg/l and an acute criterion of 20 µg/l for selenium.

146.    Reports submitted by Kanawha Energy under the terms of WV/NPDES Permit WV1015176 reveal that Kanawha Energy has discharged selenium into Fourmile Fork of Smithers Creek of the Kanawha River from Outfall 007 regulated by WV/NPDES Permit

WV1015176 in amounts that violate water quality standards and, thus, the condition in its permit prohibiting discharges that violate those standards.

147.    Appendix H to this Complaint sets forth the instances where Kanawha Energy has reported selenium concentrations at Outfall 007 that exceed the numeric selenium water quality criteria.

148.    Those data indicate that Kanawha Energy's discharges have caused violations of the chronic and/or acute selenium water quality standard on multiple occasions between April 1, 2008, and March 31, 2012.

149.    On the basis of Kanawha Energy's pattern of violations of discharging excess selenium from Outfall 007 regulated by WV/NDPES Permit Number WV1015176 and the absence of any evidence of any meaningful efforts by Kanawha Energy to eradicate the cause of the violations, Plaintiffs allege that Kanawha Energy is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

### *Plaintiffs' 60-Day Notice*

150.    Plaintiffs sent a notice of intent letter (hereinafter, "NOI"), postmarked on April 23, 2012, to Defendants, notifying them that their discharges of selenium and their violations of the effluent limitations and other terms and conditions of WV/NPDES Permits WV1008277, WV1010689, WV1015559, WV1016938, WV1016890, WV0093929, WV0097217, WV1012452, and WV1015176 violate the Clean Water Act and SMCRA.

151.    The NOI also notified Defendants of Plaintiffs' intent to sue Defendants for those violations at the end of the 60-day period required by statute.

152.    The NOI was sent by certified mail, return receipt requested, to (among others) the following persons:  S. Craig Boggs, President, Alex Energy, Inc.; Jeffrey A. Ellis, President, Aracoma Coal Company, Inc.; Michael S. Damous, President, Bandmill Coal Corporation;

Jeffrey A. Ellis, President, Highland Mining Company; Eric D. Salyer, President, Independence

Coal Company, Inc.; Eric D. Salyer, President, Jacks Branch Coal Company; S. Craig Boggs,

President, Kanawha Energy Company; Secretary Randy Huffman, WVDEP; Shawn M. Garvin,

Regional Administrator of EPA Region III; Lisa P. Jackson, Administrator of EPA; Ken Salazar,

Secretary of the United States Department of Interior; Joseph Pizarchik, Director of the Office of

Surface Mining Reclamation and Enforcement; Corporation Service Company, Registered Agent

for Alex Energy, Inc.; Corporation Service Company, Registered Agent for Aracoma Coal

Company, Inc.; Corporation Service Company, Registered Agent for Bandmill Coal

Corporation; Corporation Service Company, Registered Agent for Highland Mining Company;

Corporation Service Company, Registered Agent for Independence Coal Company, Inc.;

Corporation Service Company, Registered Agent for Jacks Branch Coal Company; and

Corporation Service Company, Registered Agent for Kanawha Energy Company.  The NOI was

also sent to the Regional Director for the Appalachian Region of the Office of Surface Mining

Enforcement and Reclamation via first class mail, postage prepaid.  All certified mail recipients

identified above received the NOI by April 30, 2012.

### FIRST CLAIM FOR RELIEF
(Clean Water Act Violations of WV/NPDES Permit Number WV1008277)

153.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1

through 152 supra.

154.    Alex Energy's wastewater discharges identified in the above paragraphs are

discharges from a point source or sources into navigable waters of the United States within the

meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant

by any person, except in compliance with a permit.  33 U.S.C. § 1311.

155.    The condition of WV/NPDES Permit Number WV1008277 that provides that the

"[t]he discharge or discharges covered by [this] WV/NPDES  are to be of such quality so as not

24

to cause a violation of applicable water quality standards promulgated by 47 CSR 2" is an

enforceable "effluent standard[] or limitation[]" for purposes of Section 505(a)(1) of the Clean

Water Act because it is a condition of a permit issued under Section 402 of the Act.  33 U.S.C. §

1365(f).

156.    The West Virginia selenium water quality standards of 5 µg/l chronic and 20 µg/l

acute are applicable water quality standards promulgated by 47 C.S.R. § 2 for purposes of the

permit condition described in the above paragraph.

157.    As established by its discharge monitoring reports, Alex Energy caused violations

of the chronic and acute selenium water quality standards in an unnamed tributary of Newsome

Branch and Trace Fork by its discharges from Outfalls 001 and 003 regulated by WV/NPDES

Permit WV1008277 on multiple occasions between April 1, 2007 and March 31, 2012.

158.    Accordingly, Alex Energy is violating the condition of WV/NPDES Permit

WV1008277 that prohibits discharges that cause water quality standards violations.

159.    Unless enjoined, Alex Energy will remain in continuing violation of the Clean

Water Act.

160.    On information and belief, Plaintiffs allege that Alex Energy is in continuing

and/or intermittent violation of the Clean Water Act as a result of its violations of the condition

of its permit prohibiting discharges that cause water quality standards violations because Alex

Energy has taken no meaningful action to eradicate the underlying cause of the violations.

161.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Alex Energy is

liable for civil penalties of up to $37,500 per day of violation for its violations of the terms and

conditions of WV/NPDES Permit Number WV1008277.

**SECOND CLAIM FOR RELIEF**
(SMCRA Violations Related to the Condition of WV/NPDES Permit Number WV1008277
Prohibiting Water Quality Standards Violations)

162.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

163.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

164.    As discussed above, federal and state regulations under SMCRA include performance standards that prohibit surface mining operations that cause violations of water quality standards.

165.    Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

166.    WV/NPDES Permit Number WV1008277 regulates Alex Energy's discharges from its Whitman No. 2 Surface Mine (WVSCMRA Permit No. S505389).

167.     Alex Energy's discharges from Outfalls 001and 003 of the Whitman No. 2 Surface Mine have caused violations of the chronic and acute selenium water quality standards in an unnamed tributary of Newsome Branch and Trace Fork on multiple occasions between April 1, 2007, and March 31, 2012.

168.    Consequently, Alex Energy has committed one or more violations of the performance standards incorporated in the regulations under SMCRA and WVSCMRA.

169.    Because those performance standards are permit conditions, Alex Energy is also in violation of the terms and conditions of WVSCMRA Permit S505389.

170.    Unless enjoined, Alex Energy will remain in ongoing and continuing violation of that permit, SMCRA, and WVSCMRA.

171.    On information and belief, Plaintiffs allege that Alex Energy is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permit S505389 as a

result of its violations of water quality standards and of the condition of WV/NPDES Permit

Number WV1008277 that prohibits discharges that cause violations of water quality standards

because Alex Energy has taken no meaningful action to eradicate the underlying cause of the

violations.

**THIRD CLAIM FOR RELIEF**

(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Whitman
No. 2 Surface Mine)

172.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1

through 152 supra.

173.    As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c

require the installation, operation, and maintenance of adequate treatment facilities when

necessary to prevent discharges that violate state or federal law.

174.    As described above, Alex Energy's discharges of selenium have resulted in

numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and WVSCMRA Permit

S505389, demonstrating the company's failure to install, operate, and maintain adequate

treatment facilities.

175.    Consequently, Alex Energy has violated the WVSCMRA standards at 38 C.S.R. §

2–14.5.c.

176.    Because those performance standards are permit conditions, Alex Energy is also

in violation of the terms and conditions of WVSCMRA Permit S505389.

177.    On information and belief, Plaintiffs allege that Alex Energy is in continuing

violation of SMCRA, WVSCMRA, and WVSCMRA Permit S505389 as a result of its failure to

install, operate, and maintain adequate treatment facilities.

178.    Unless enjoined, Alex Energy will remain in continuing violation of SMCRA,

WVSCMRA, and WVSCMRA Permit S505389.

**FOURTH CLAIM FOR RELIEF**
(Clean Water Act Violations of WV/NPDES Permit Number WV1010689)

179.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 <u>supra</u>.

180.    Aracoma's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

181.    The condition of WV/NPDES Permit Number WV1010689 that provides that the "[t]he discharge or discharges covered by [this] WV/NPDES  are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2" is an enforceable "effluent standard[] or limitation[]" for purposes of Section 505(a)(1) of the Clean Water Act because it is a condition of a permit issued under Section 402 of the Act.  33 U.S.C. § 1365(f).

182.    The West Virginia selenium water quality standards of 5 µg/l chronic and 20 µg/l acute are applicable water quality standards promulgated by 47 C.S.R. § 2 for purposes of the permit condition described in the above paragraph.

183.    On information and belief, Plaintiffs allege that Aracoma caused violations of the chronic and acute selenium water quality standards in Camp Branch (through Outfalls 001, 009, 023, 024, 037, 038, and 052), one or more unnamed tributaries of Dingess Run (through Outfalls 002 and 036), Dingess Run (through Outfalls 005, 006, 007, 008, and 044), Ethel Hollow (through Outfall 029), and Freeze Fork (through Outfall 053) on multiple occasions between October 2009 and May 2010.

184.    Accordingly, Aracoma is violating the condition of WV/NPDES Permit WV1010689 that prohibits discharges that cause water quality standards violations.

185.     Unless enjoined, Aracoma will remain in continuing violation of the Clean Water Act.

186.     On information and belief, Plaintiffs allege that Aracoma is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the condition of its permit prohibiting discharges that cause water quality standards violations because Aracoma has taken no meaningful action to eradicate the underlying cause of the violations.

187.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Aracoma is liable for civil penalties of up to $37,500 per day of violation for its violations of the terms and conditions of WV/NPDES Permit Number WV1010689.

### FIFTH CLAIM FOR RELIEF
(SMCRA Violations Related to the Condition of WV/NPDES Permit Number WV1010689 Prohibiting Water Quality Standards Violations)

188.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

189.     Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

190.     As discussed above, federal and state regulations under SMCRA include performance standards that prohibit surface mining operations that cause violations of water quality standards.

191.     Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

192.     WV/NPDES Permit Number WV1010689 regulates Aracoma's discharges from its Piney Fork Slurry Impoundment and Ethel Preparation Plant (WVSCMRA Permit No. O502090), its Ethel Hollow Surface Mine (WVSCMRA Permit No. S501390), its Stockton # 1

29

Deep Mine (WVVSCMRA Permit No. U501191), and its Princess Aracoma Deep Mine (WVSCMRA Permit U502190).

193.    Aracoma's discharges from Outfalls 001, 002, 005, 006, 007, 008, 009, 023, 024, 029, 036, 037, 038, 044, 052, and 053 regulated by WV/NPDES Permit WV1010689 have caused violations of the chronic and acute selenium water quality standards in Camp Branch, one or more unnamed tributaries of Dingess Run, Dingess Run, Ethel Hollow, and Freeze Fork on multiple occasions between October 2009 and May 2010.

194.    Consequently, Aracoma has committed one or more violations of the performance standards incorporated in the regulations under SMCRA and WVSCMRA.

195.    Because those performance standards are permit conditions, Aracoma is also in violation of the terms and conditions of WVSCMRA Permits O502090, S501390, U501191, and U502190.

196.    Unless enjoined, Aracoma will remain in ongoing and continuing violation of those permits, SMCRA, and WVSCMRA.

197.    On information and belief, Plaintiffs allege that Aracoma is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permits O502090, S501390, U501191, and U502190 as a result of its violations of water quality standards and of the condition of WV/NPDES Permit Number WV1010689 that prohibits discharges that cause violations of water quality standards because Aracoma has taken no meaningful action to eradicate the underlying cause of the violations.

## SIXTH CLAIM FOR RELIEF
(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Piney Fork Slurry Impoundment and Ethel Preparation Plant, the Ethel Hollow Surface Mine, the Stockton #1 Deep Mine, and/or the Princess Aracoma Deep Mine)

198.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

199.    As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c require the installation, operation, and maintenance of adequate treatment facilities when necessary to prevent discharges that violate state or federal law.

200.    As described above, Aracoma's discharges of selenium have resulted in numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and WVSCMRA Permits O502090, S501390, U501191, and U502190, demonstrating the company's failure to install, operate, and maintain adequate treatment facilities.

201.    Consequently, Aracoma has violated the WVSCMRA standards at 38 C.S.R. § 2–14.5.c.

202.    Because those performance standards are permit conditions, Aracoma is also in violation of the terms and conditions of WVSCMRA Permits O502090, S501390, U501191, and U502190.

203.    On information and belief, Plaintiffs allege that Aracoma is in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits O502090, S501390, U501191, and U502190 as a result of its failure to install, operate, and maintain adequate treatment facilities.

204.    Unless enjoined, Aracoma will remain in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits O502090, S501390, U501191, and U502190.

**SEVENTH CLAIM FOR RELIEF**
(Clean Water Act Violations of WV/NPDES Permit Number WV1015559)

205.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

206.    Bandmill's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

207.     The condition of WV/NPDES Permit Number WV1015559 that provides that the "[t]he discharge or discharges covered by [this] WV/NPDES are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2" is an enforceable "effluent standard[] or limitation[]" for purposes of Section 505(a)(1) of the Clean Water Act because it is a condition of a permit issued under Section 402 of the Act. 33 U.S.C. § 1365(f).

208.     The West Virginia selenium water quality standards of 5 µg/l chronic and 20 µg/l acute are applicable water quality standards promulgated by 47 C.S.R. § 2 for purposes of the permit condition described in the above paragraph.

209.     As established by WVDEP sampling, Bandmill caused violations of the chronic and acute selenium water quality standards in Burgess Branch by its discharges from Outfall 001 regulated by WV/NPDES Permit WV1015559 in June 2011.

210.     Accordingly, Bandmill is violating the condition of WV/NPDES Permit WV1015559 that prohibits discharges that cause water quality standards violations.

211.     Unless enjoined, Bandmill will remain in continuing violation of the Clean Water Act.

212.     On information and belief, Plaintiffs allege that Bandmill is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the condition of its permit prohibiting discharges that cause water quality standards violations because Bandmill has taken no meaningful action to eradicate the underlying cause of the violations.

213.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Bandmill is liable for civil penalties of up to $37,500 per day of violation for its violations of the terms and conditions of WV/NPDES Permit Number WV1015559.

**EIGHTH CLAIM FOR RELIEF**
(SMCRA Violations Related to the Condition of WV/NPDES Permit Number WV1015559

Prohibiting Water Quality Standards Violations)

214.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

215.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

216.    As discussed above, federal and state regulations under SMCRA include performance standards that prohibit surface mining operations that cause violations of water quality standards.

217.    Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

218.    WV/NPDES Permit Number WV1015559 regulates Bandmill's discharges from its Tower Mountain Surface Mine (WVSCMRA Permit No. S502393).

219.     Bandmill's discharges from Outfall 001 of the Tower Mountain Surface Mine caused violations of the chronic and acute selenium water quality standards in Burgess Branch in June 2011.

220.    Consequently, Bandmill has committed one or more violations of the performance standards incorporated in the regulations under SMCRA and WVSCMRA.

221.    Because those performance standards are permit conditions, Bandmill is also in violation of the terms and conditions of WVSCMRA Permit S502393.

222.    Unless enjoined, Bandmill will remain in ongoing and continuing violation of that permit, SMCRA, and WVSCMRA.

223.    On information and belief, Plaintiffs allege that Bandmill is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permit S502393 as a result of

its violations of water quality standards and of the condition of WV/NPDES Permit Number WV1015559 that prohibits discharges that cause violations of water quality standards because Bandmill has taken no meaningful action to eradicate the underlying cause of the violations.

## NINTH CLAIM FOR RELIEF
(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Tower Mountain Surface Mine)

224.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

225.    As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c require the installation, operation, and maintenance of adequate treatment facilities when necessary to prevent discharges that violate state or federal law.

226.    As described above, Bandmill's discharges of selenium have resulted in numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and WVSCMRA Permit S502393, demonstrating the company's failure to install, operate, and maintain adequate treatment facilities.

227.    Consequently, Bandmill has violated the WVSCMRA standards at 38 C.S.R. § 2–14.5.c.

228.    Because those performance standards are permit conditions, Bandmill is also in violation of the terms and conditions of WVSCMRA Permit S502393.

229.    On information and belief, Plaintiffs allege that Bandmill is in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permit S502393 as a result of its failure to install, operate, and maintain adequate treatment facilities.

230.    Unless enjoined, Bandmill will remain in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permit S502393.

## TENTH CLAIM FOR RELIEF
(Clean Water Act Violations of WV/NPDES Permit Number WV1016938)

34

231.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

232.    Highland's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

233.    The condition of WV/NPDES Permit Number WV1016938 that provides that the "[t]he discharge or discharges covered by [this] WV/NPDES  are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2" is an enforceable "effluent standard[] or limitation[]" for purposes of Section 505(a)(1) of the Clean Water Act because it is a condition of a permit issued under Section 402 of the Act.  33 U.S.C. § 1365(f).

234.    The West Virginia selenium water quality standards of 5 μg/l chronic and 20 μg/l acute are applicable water quality standards promulgated by 47 C.S.R. § 2 for purposes of the permit condition described in the above paragraph.

235.    As established by its discharge monitoring reports, Highland caused violations of the chronic and acute selenium water quality standards in one or more unnamed tributaries of Freeze Fork and in Freeze Fork by its discharges from Outfalls 001, 019, and 020 regulated by WV/NPDES Permit WV1016938 on multiple occasions between January 1, 2006 and March 31, 2012.

236.    Accordingly, Highland is violating the condition of WV/NPDES Permit WV1016938 that prohibits discharges that cause water quality standards violations.

237.    Unless enjoined, Highland will remain in continuing violation of the Clean Water Act.

238.    On information and belief, Plaintiffs allege that Highland is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the condition of its permit prohibiting discharges that cause water quality standards violations because Highland has taken no meaningful action to eradicate the underlying cause of the violations.

239.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Highland is liable for civil penalties of up to $37,500 per day of violation for its violations of the terms and conditions of WV/NPDES Permit Number WV1016938.

## ELEVENTH CLAIM FOR RELIEF
(SMCRA Violations Related to the Condition of WV/NPDES Permit Number WV1016938 Prohibiting Water Quality Standards Violations)

240.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

241.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

242.    As discussed above, federal and state regulations under SMCRA include performance standards that prohibit surface mining operations that cause violations of water quality standards.

243.    Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

244.    WV/NPDES Permit Number WV1016938 regulates Highland's discharges from its Freeze Fork Surface Mine and Freeze Fork Haulroad (WVSCMRA Permits S503096 and O500703).

245.    Highland's discharges from Outfalls 001, 019, and 020 of its Freeze Fork operations have caused violations of the chronic and acute selenium water quality standards in

one or more unnamed tributaries of Freeze Fork and Freeze Fork on multiple occasions between January 1, 2006, and March 31, 2012.

246.    Consequently, Highland has committed one or more violations of the performance standards incorporated in the regulations under SMCRA and WVSCMRA.

247.    Because those performance standards are permit conditions, Highland is also in violation of the terms and conditions of WVSCMRA Permits S503096 and O500703.

248.    Unless enjoined, Highland will remain in ongoing and continuing violation of that permit, SMCRA, and WVSCMRA.

249.    On information and belief, Plaintiffs allege that Highland is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permits S503096 and O500703 as a result of its violations of water quality standards and of the condition of WV/NPDES Permit Number WV1016938 that prohibits discharges that cause violations of water quality standards because Highland has taken no meaningful action to eradicate the underlying cause of the violations.

**TWELFTH CLAIM FOR RELIEF**
(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Freeze Fork Operations)

250.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

251.    As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c require the installation, operation, and maintenance of adequate treatment facilities when necessary to prevent discharges that violate state or federal law.

252.    As described above, Highland's discharges of selenium have resulted in numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and WVSCMRA Permits S503096 and O500703, demonstrating the company's failure to install, operate, and maintain adequate

treatment facilities.

253.    Consequently, Highland has violated the WVSCMRA standards at 38 C.S.R. § 2–14.5.c.

254.    Because those performance standards are permit conditions, Highland is also in violation of the terms and conditions of WVSCMRA Permits S503096 and O500703.

255.    On information and belief, Plaintiffs allege that Highland is in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits S503096 and O500703 as a result of its failure to install, operate, and maintain adequate treatment facilities.

256.    Unless enjoined, Highland will remain in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits S503096 and O500703.

### THIRTEENTH CLAIM FOR RELIEF
(Clean Water Act Violations of WV/NPDES Permit Number WV1016890)

257.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

258.    Independence's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

259.    The condition of WV/NPDES Permit Number WV1016890 that provides that the "[t]he discharge or discharges covered by [this] WV/NPDES  are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2" is an enforceable "effluent standard[] or limitation[]" for purposes of Section 505(a)(1) of the Clean Water Act because it is a condition of a permit issued under Section 402 of the Act.  33 U.S.C. § 1365(f).

260.    The West Virginia selenium water quality standards of 5 µg/l chronic and 20 µg/l

38

acute are applicable water quality standards promulgated by 47 C.S.R. § 2 for purposes of the permit condition described in the above paragraph.

261.    As established by its discharge monitoring reports, Independence caused violations of the chronic and acute selenium water quality standards in Chimney Branch by its discharges from Outfall 004 regulated by WV/NPDES Permit WV1016890 on multiple occasions between January 24, 2012 and March 31, 2012.

262.    Accordingly, Independence is violating the condition of WV/NPDES Permit WV1016890 that prohibits discharges that cause water quality standards violations.

263.    Unless enjoined, Independence will remain in continuing violation of the Clean Water Act.

264.    On information and belief, Plaintiffs allege that Independence is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the condition of its permit prohibiting discharges that cause water quality standards violations because Independence has taken no meaningful action to eradicate the underlying cause of the violations.

265.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Independence is liable for civil penalties of up to $37,500 per day of violation for its violations of the terms and conditions of WV/NPDES Permit Number WV1016890.

## FOURTEENTH CLAIM FOR RELIEF
(SMCRA Violations Related to the Condition of WV/NPDES Permit Number WV1016890 Prohibiting Water Quality Standards Violations)

266.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

267.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

268.    As discussed above, federal and state regulations under SMCRA include performance standards that prohibit surface mining operations that cause violations of water quality standards.

269.    Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

270.    WV/NPDES Permit Number WV1016890 regulates Independence's discharges from its Twilight MTR Surface Mine (WVSCMRA Permit S502396).

271.     Independence's discharges from Outfall 004 of its Twilight MTR Surface Mine caused violations of the chronic and acute selenium water quality standards in Chimney Branch on multiple occasions between January 24, 2012, and March 31, 2012.

272.    Consequently, Independence has committed one or more violations of the performance standards incorporated in the regulations under SMCRA and WVSCMRA.

273.    Because those performance standards are permit conditions, Independence is also in violation of the terms and conditions of WVSCMRA Permit S502396.

274.    Unless enjoined, Independence will remain in ongoing and continuing violation of that permit, SMCRA, and WVSCMRA.

275.    On information and belief, Plaintiffs allege that Independence is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permit S502396 as a result of its violations of water quality standards and of the condition of WV/NPDES Permit Number WV1016890 that prohibits discharges that cause violations of water quality standards because Independnce has taken no meaningful action to eradicate the underlying cause of the violations.

### FIFTEENTH CLAIM FOR RELIEF
(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Twilight MTR Surface Mine)

276.   Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

277.   As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c require the installation, operation, and maintenance of adequate treatment facilities when necessary to prevent discharges that violate state or federal law.

278.   As described above, Independence's discharges of selenium have resulted in numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and WVSCMRA Permit S502396, demonstrating the company's failure to install, operate, and maintain adequate treatment facilities.

279.   Consequently, Independence has violated the WVSCMRA standards at 38 C.S.R. § 2–14.5.c.

280.   Because those performance standards are permit conditions, Independence is also in violation of the terms and conditions of WVSCMRA Permit S502396.

281.   On information and belief, Plaintiffs allege that Independence is in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits S502396 as a result of its failure to install, operate, and maintain adequate treatment facilities.

282.   Unless enjoined, Independence will remain in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits S502396.

### SIXTEENTH CLAIM FOR RELIEF
(Clean Water Act Violations of WV/NPDES Permit Number WV0093929)

283.   Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

284.   Jacks Branch's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant

41

by any person, except in compliance with a permit.  33 U.S.C. § 1311.

285.    The selenium limits in WV/NPDES Permit Number WV0093929 are "effluent standards or limitations" for purposes of Section 505(a)(1) of the Clean Water Act because they are a condition of a permit issued under Section 402 of the Act.  33 U.S.C. § 1365(f).

286.    Each and every discharge in excess of the effluent limitations in WV/NPDES Permit Number WV0093929 is actionable under Section 505(a)(1) of the Clean Water Act.  33 U.S.C. § 1365(a)(1).

287.    A violation of an average monthly effluent limitation in a permit is considered to be a violation on each and every day of that month.

288.    Jacks Branch violated the selenium effluent limitations in WV/NPDES Permit WV0093929 at least 63 times between January 25, 2010, and March 31, 2012, amounting to 920 cumulative days of violations.

289.    Unless enjoined, Jacks Branch will remain in continuing violation of the Clean Water Act.

290.    On information and belief, Plaintiffs allege that Jacks Branch is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in WV/NPDES Permit Number WV0093929 because Jacks Branch has taken no meaningful action to eradicate the underlying cause of the violations.

291.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Jacks Branch is liable for civil penalties of up to $37,500 per day of violation for its violations of the effluent limitations in WV/NPDES Permit Number WV0093929.

### SEVENTEENTH CLAIM FOR RELIEF
(SMCRA Violations Related to Violations of Effluent Limitations in WV/NPDES Permit WV0093929)

292.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1

through 152 supra.

293.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

294.    As discussed above, federal and state regulations under SMCRA include performance standards that (1) prohibit surface mining operations that cause violations of effluent limitations in Clean Water Act permits, (2) prohibit surface mining operations that cause violations of water quality standards, and (3) prohibit operations from causing material damage to the hydrologic balance outside of the permit area.

295.    Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

296.    WV/NPDES Permit Number WV0093929 regulates Jacks Branch's discharges from its Lady Dunn Preparation Plant Complex (WVSCMRA Permits O007582, S007085, S008883, S012782, and S600866).

297.    Jacks Branch accrued at least 920 days of violation of the effluent limitations in WV/NPDES Permit WV0093929 between January 25, 2010, and March 31, 2012.

298.    Consequently, Jacks Branch has committed one or more violations of the performance standards incorporated in the regulations under SMCRA.

299.    Because those performance standards are permit conditions, Jacks Branch is also in violation of the terms and conditions of WVSCMRA Permits O007582, S007085, S008883, S012782, and S600866.

300.    Unless enjoined, Jacks Branch will remain in ongoing and continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits O007582, S007085, S008883, S012782, and S600866.

301.    On information and belief, Plaintiffs allege that Jacks Branch is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permits O007582, S007085, S008883, S012782, and S600866 as a result of its violations of the effluent limitations in WV/NPDES Permit Number WV0093929 because Jacks Branch has taken no meaningful action to eradicate the underlying cause of the violations.

## EIGHTEENTH CLAIM FOR RELIEF
(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Lady Dunn Preparation Plant Complex)

302.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

303.    As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c require the installation, operation, and maintenance of adequate treatment facilities when necessary to prevent discharges that violate state or federal law.

304.    As described above, Jacks Branch's discharges of selenium have resulted in numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and WVSCMRA Permits O007582, S007085, S008883, S012782, and S600866, demonstrating the company's failure to install, operate, and maintain adequate treatment facilities.

305.    Consequently, Jacks Branch has violated the WVSCMRA standards at 38 C.S.R. § 2–14.5.c.

306.    Because those performance standards are permit conditions, Jacks Branch is also in violation of the terms and conditions of WVSCMRA Permits O007582, S007085, S008883, S012782, and S600866.

307.    On information and belief, Plaintiffs allege that Jacks Branch is in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits O007582, S007085, S008883, S012782, and S600866 as a result of its failure to install, operate, and maintain adequate

treatment facilities.

308.    Unless enjoined, Jacks Branch will remain in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits O007582, S007085, S008883, S012782, and S600866.

## NINETEENTH CLAIM FOR RELIEF
### (Clean Water Act Violations of WV/NPDES Permit Number WV0097217)

309.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

310.    Jacks Branch's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

311.    The condition of WV/NPDES Permit Number WV0097217 that provides that the "[t]he discharge or discharges covered by [this] WV/NPDES  are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2" is an enforceable "effluent standard[] or limitation[]" for purposes of Section 505(a)(1) of the Clean Water Act because it is a condition of a permit issued under Section 402 of the Act.  33 U.S.C. § 1365(f).

312.    The West Virginia selenium water quality standards of 5 μg/l chronic and 20 μg/l acute are applicable water quality standards promulgated by 47 C.S.R. § 2 for purposes of the permit condition described in the above paragraph.

313.    As established by its discharge monitoring reports, Jacks Branch caused violations of the chronic selenium water quality standards in Hughes Creek by its discharges from Outfall 005 regulated by WV/NPDES Permit WV0097217 on multiple occasions between December 1, 2007, and March 31, 2012.

314.    Accordingly, Jacks Branch is violating the condition of WV/NPDES Permit

WV0097217 that prohibits discharges that cause water quality standards violations.

315.    Unless enjoined, Jacks Branch will remain in continuing violation of the Clean Water Act.

316.    On information and belief, Plaintiffs allege that Jacks Branch is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the condition of its permit prohibiting discharges that cause water quality standards violations because Jacks Branch has taken no meaningful action to eradicate the underlying cause of the violations.

317.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Jacks Branch is liable for civil penalties of up to $37,500 per day of violation for its violations of the terms and conditions of WV/NPDES Permit Number WV0097217.

**TWENTIETH CLAIM FOR RELIEF**
(SMCRA Violations Related to the Condition of WV/NPDES Permit Number WV0097217 Prohibiting Water Quality Standards Violations)

318.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

319.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

320.    As discussed above, federal and state regulations under SMCRA include performance standards that prohibit surface mining operations that cause violations of water quality standards.

321.    Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

322.    WV/NPDES Permit Number WV0097217 regulates Jacks Branch's discharges from its Hughes Creek Surface Mine (WVSCMRA Permit S301491).

46

323.    Jacks Branch's discharges from Outfall 005 of its Hughes Creek Surface Mine caused violations of the chronic selenium water quality standard in Hughes Creek on multiple occasions between December 1, 2007, and March 31, 2012.

324.    Consequently, Jacks Branch has committed one or more violations of the performance standards incorporated in the regulations under SMCRA and WVSCMRA.

325.    Because those performance standards are permit conditions, Jacks Branch is also in violation of the terms and conditions of WVSCMRA Permit S301491.

326.    Unless enjoined, Jacks Branch will remain in ongoing and continuing violation of that permit, SMCRA, and WVSCMRA.

327.    On information and belief, Plaintiffs allege that Jacks Branch is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permit S301491 as a result of its violations of water quality standards and of the condition of WV/NPDES Permit Number WV0097217 that prohibits discharges that cause violations of water quality standards because Jacks Branch has taken no meaningful action to eradicate the underlying cause of the violations.

### TWENTY-FIRST CLAIM FOR RELIEF
(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Hughes Creek Surface Mine)

328.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

329.    As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c require the installation, operation, and maintenance of adequate treatment facilities when necessary to prevent discharges that violate state or federal law.

330.    As described above, Jacks Branch's discharges of selenium have resulted in numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and WVSCMRA Permit

S301491, demonstrating the company's failure to install, operate, and maintain adequate treatment facilities.

331.    Consequently, Jacks Branch has violated the WVSCMRA standards at 38 C.S.R. § 2–14.5.c.

332.    Because those performance standards are permit conditions, Jacks Branch is also in violation of the terms and conditions of WVSCMRA Permit S301491.

333.    On information and belief, Plaintiffs allege that Jacks Branch is in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits S301491 as a result of its failure to install, operate, and maintain adequate treatment facilities.

334.    Unless enjoined, Jacks Branch will remain in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permit S301491.

**TWENTY-SECOND CLAIM FOR RELIEF**
(Clean Water Act Violations of WV/NPDES Permit Number WV1012452)

335.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

336.    Jacks Branch's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

337.    The selenium limits in WV/NPDES Permit Number WV1012452 are "effluent standards or limitations" for purposes of Section 505(a)(1) of the Clean Water Act because they are a condition of a permit issued under Section 402 of the Act.  33 U.S.C. § 1365(f).

338.    Each and every discharge in excess of the effluent limitations in WV/NPDES Permit Number WV1012452 is actionable under Section 505(a)(1) of the Clean Water Act.  33 U.S.C. § 1365(a)(1).

48

339.    A violation of an average monthly effluent limitation in a permit is considered to be a violation on each and every day of that month.

340.    Jacks Branch violated the selenium effluent limitations in WV/NPDES Permit WV1012452 at least 139 times between March 21, 2010, and March 31, 2012, amounting to 1,788 cumulative days of violations.

341.    Unless enjoined, Jacks Branch will remain in continuing violation of the Clean Water Act.

342.    On information and belief, Plaintiffs allege that Jacks Branch is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in WV/NPDES Permit Number WV1012452 because Jacks Branch has taken no meaningful action to eradicate the underlying cause of the violations.

343.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Jacks Branch is liable for civil penalties of up to $37,500 per day of violation for its violations of the effluent limitations in WV/NPDES Permit Number WV1012452.

## <u>TWENTY-THIRD CLAIM FOR RELIEF</u>
(CWA Claim Based on Violations of Order 2332)

344.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 <u>supra</u>.

345.    Order No. 2332 that Jacks Branch received from WVDEP constitutes an "order issued by the Administrator or a State with respect to [effluent] standard[s] or limitation[s]" for purposes of Section 505(a)(1) of the CWA and, hence, violations of Order No. 2332 are actionable in a Clean Water Act citizen suit.

346.    Order No. 2332 includes enforceable selenium limitations that became effective on March 21, 2010.

347.    As described above, Jacks Branch has violated those limitations and is in

continuing and ongoing violations of those limitations.

348.    Unless enjoined, Jacks Branch will remain in continuing violation of Order No.

2332.

## TWENTY-FOURTH CLAIM FOR RELIEF
(SMCRA Violations Related to Violations of Effluent Limitations in WV/NPDES Permit
WV1012452)

349.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1

through 152 supra.

350.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal

court against any "person who is alleged to be in violation of any rule, regulation, order or permit

issued pursuant to this subchapter."

351.    As discussed above, federal and state regulations under SMCRA include

performance standards that (1) prohibit surface mining operations that cause violations of

effluent limitations in Clean Water Act permits, (2) prohibit surface mining operations that cause

violations of water quality standards, and (3) prohibit operations from causing material damage

to the hydrologic balance outside of the permit area.

352.    Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as

conditions in permits issued under the State Act.

353.    WV/NPDES Permit Number WV1012452 regulates Jacks Branch's discharges

from its Stockton Mine (WVSCMRA Permit U304291).

354.     Jacks Branch accrued at least 1,788 days of violation of the effluent limitations in

WV/NPDES Permit WV1012452 and Order No. 2332 between March 21, 2010, and March 31,

2012.

355.    Consequently, Jacks Branch has committed one or more violations of the

performance standards incorporated in the regulations under SMCRA.

356.    Because those performance standards are permit conditions, Jacks Branch is also in violation of the terms and conditions of WVSCMRA Permit U304291.

357.    Unless enjoined, Jacks Branch will remain in ongoing and continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permit U304291.

358.    On information and belief, Plaintiffs allege that Jacks Branch is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permit U304291 as a result of its violations of the effluent limitations in WV/NPDES Permit Number WV1012452 because Jacks Branch has taken no meaningful action to eradicate the underlying cause of the violations.

**TWENTY-FIFTH CLAIM FOR RELIEF**
(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Stockton Mine)

359.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

360.    As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c require the installation, operation, and maintenance of adequate treatment facilities when necessary to prevent discharges that violate state or federal law.

361.    As described above, Jacks Branch's discharges of selenium have resulted in numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and WVSCMRA Permit U304291, demonstrating the company's failure to install, operate, and maintain adequate treatment facilities.

362.    Consequently, Jacks Branch has violated the WVSCMRA standards at 38 C.S.R. § 2–14.5.c.

363.    Because those performance standards are permit conditions, Jacks Branch is also in violation of the terms and conditions of WVSCMRA Permit U304291.

364.    On information and belief, Plaintiffs allege that Jacks Branch is in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permit U304291 as a result of its failure to install, operate, and maintain adequate treatment facilities.

365.    Unless enjoined, Jacks Branch will remain in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permit U304291.

**TWENTY-SIXTH CLAIM FOR RELIEF**
(Clean Water Act Violations of WV/NPDES Permit Number WV1015176)

366.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

367.    Kanawha Energy's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

368.    The condition of WV/NPDES Permit Number WV1015176 that provides that the "[t]he discharge or discharges covered by [this] WV/NPDES  are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2" is an enforceable "effluent standard[] or limitation[]" for purposes of Section 505(a)(1) of the Clean Water Act because it is a condition of a permit issued under Section 402 of the Act.  33 U.S.C. § 1365(f).

369.    The West Virginia selenium water quality standards of 5 µg/l chronic and 20 µg/l acute are applicable water quality standards promulgated by 47 C.S.R. § 2 for purposes of the permit condition described in the above paragraph.

370.    As established by its discharge monitoring reports, Kanawha Energy caused violations of the chronic and/or acute selenium water quality standards in Fourmile Fork by its discharges from Outfall 007 regulated by WV/NPDES Permit WV1015176 on multiple

occasions between April 1, 2008, and March 31, 2012.

371.   Accordingly, Kanawha Energy is violating the condition of WV/NPDES Permit WV1015176 that prohibits discharges that cause water quality standards violations.

372.   Unless enjoined, Kanawha Energy will remain in continuing violation of the Clean Water Act.

373.   On information and belief, Plaintiffs allege that Kanawha Energy is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the condition of its permit prohibiting discharges that cause water quality standards violations because Kanawha Energy has taken no meaningful action to eradicate the underlying cause of the violations.

374.   Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Kanawha Energy is liable for civil penalties of up to $37,500 per day of violation for its violations of the terms and conditions of WV/NPDES Permit Number WV1015176.

**TWENTY-SEVENTH CLAIM FOR RELIEF**
(SMCRA Violations Related to the Condition of WV/NPDES Permit Number WV1015176
Prohibiting Water Quality Standards Violations)

375.   Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

376.   Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

377.   As discussed above, federal and state regulations under SMCRA include performance standards that prohibit surface mining operations that cause violations of water quality standards.

378.   Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as

53

conditions in permits issued under the State Act.

379.    WV/NPDES Permit Number WV1015176 regulates Kanawha Energy's discharges from its Fourmile Fork Surface Mine (WVSCMRA Permit S300296).

380.    Kanawha Energy's discharges from Outfall 007 of its Fourmile Fork Surface Mine caused violations of the chronic and acute selenium water quality standards in Fourmile Fork on multiple occasions between April 1, 2008, and March 31, 2012.

381.    Consequently, Kanawha Energy has committed one or more violations of the performance standards incorporated in the regulations under SMCRA and WVSCMRA.

382.    Because those performance standards are permit conditions, Kanawha Energy is also in violation of the terms and conditions of WVSCMRA Permit S300296.

383.    Unless enjoined, Kanawha Energy will remain in ongoing and continuing violation of that permit, SMCRA, and WVSCMRA.

384.    On information and belief, Plaintiffs allege that Kanawha Energy is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permit S300296 as a result of its violations of water quality standards and of the condition of WV/NPDES Permit Number WV1015176 that prohibits discharges that cause violations of water quality standards because Kanawha Energy has taken no meaningful action to eradicate the underlying cause of the violations.

## TWENTY-EIGHTH CLAIM FOR RELIEF
(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Fourmile Fork Surface Mine)

385.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 152 supra.

386.    As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c require the installation, operation, and maintenance of adequate treatment facilities when

necessary to prevent discharges that violate state or federal law.

387.    As described above, Kanawha Energy's discharges of selenium have resulted in numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and WVSCMRA Permit S300296, demonstrating the company's failure to install, operate, and maintain adequate treatment facilities.

388.    Consequently, Kanawha Energy has violated the WVSCMRA standards at 38 C.S.R. § 2–14.5.c.

389.    Because those performance standards are permit conditions, Kanawha Energy is also in violation of the terms and conditions of WVSCMRA Permit S300296.

390.    On information and belief, Plaintiffs allege that Kanawha Energy is in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permits S300296 as a result of its failure to install, operate, and maintain adequate treatment facilities.

391.    Unless enjoined, Kanawha Energy will remain in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permit S300296.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this court enter an Order:

(1).    Declaring that Defendants have violated and are in continuing violation of the Clean Water Act and SMCRA;

(2).    Enjoining Alex Energy from operating the Whitman No. 2 Surface Mine in such a manner as will result in further violations of the condition of WV/NPDES Permit WV1008277 that prohibits discharges that violate water quality standards;

(3).    Ordering Alex Energy to immediately comply with all terms and conditions of WV/NPDES Permit WV1008277;

(4).    Ordering Alex Energy to immediately comply with all terms and conditions of

WVSCMRA Permit Number S505389 and all performance standards under SMCRA and WVSCMRA;

(5).     Enjoining Aracoma from operating the Piney Fork Slurry Impoundment and Ethel Preparation Plant, Ethel Hollow Surface Mine, Stockton #1 Deep Mine, and Princess Aracoma Deep Mine in such a manner as will result in further violations of the condition of WV/NPDES Permit WV1010689 that prohibits discharges that violate water quality standards;

(6).     Ordering Aracoma to immediately comply with all terms and conditions of WV/NPDES Permit WV1010689;

(7).     Ordering Aracoma to immediately comply with all terms and conditions of WVSCMRA Permits O502090, S501390, U501191, and U502190 and all performance standards under SMCRA and WVSCMRA;

(8).     Enjoining Bandmill from operating the Tower Mountain Surface Mine in such a manner that will result in further violations of the condition of WV/NPDES Permit WV1015559 that prohibits discharges that violate water quality standards;

(9).     Ordering Bandmill to immediately comply with all terms and conditions of WV/NPDES Permit WV1015559;

(10).     Ordering Bandmill to immediately comply with all terms and conditions of WVSCMRA Permit S502393 and all performance standards under SMCRA and WVSCMRA;

(11).     Enjoining Highland from operating the Freeze Fork Surface Mine and Freeze Fork Haulroad in such a manner that will result in further violations of the conditions of WV/NPDES Permit WV1016938 that prohibits discharges that violate water quality standards;

(12).     Ordering Highland to immediately comply with all terms and conditions of WV/NPDES Permit WV1016938;

(13).     Ordering Highland to immediately comply with all terms and conditions of

WVSCMRA Permits S503096 and O500703 and all performance standards under SMCRA and WVSCMRA;

(14).   Enjoining Independence from operating the Twilight MTR Surface Mine in such a manner that will result in further violations of condition of WV/NPDES Permit WV1016890 that prohibits discharges that violate water quality standards;

(15).   Ordering Independence to immediately comply with all terms and conditions of WV/NPDES Permit WV1016890;

(16).   Ordering Independence to immediately comply with all terms and conditions of WVSCMRA Permit S502396 and all performance standards under SMCRA and WVSCMRA;

(17).   Enjoining Jacks Branch from operating the Hughes Creek Surface Mine in such a manner as will result in further violations of the condition of WV/NPDES Permit WV0097217 that prohibits discharges that violate water quality standards and from operating the Lady Dunn Preparation Plant Complex and Stockton Mine in such a manner as will result in further violations of the selenium effluent limitations in WV/NPDES Permits WV0093929 and WV1012452;

(18).   Ordering Jacks Branch to immediately comply with all terms and conditions of WV/NPDES Permits WV0093929, WV0097217, and WV1012452;

(19).   Ordering Jacks Branch to immediately comply will all terms and conditions of WVSCMRA Permits O007582, S007085, S008883, S012782, S600866, S301491, and U304291 and all performance standards under SMCRA and WVSCMRA;

(20).   Enjoining Kanawha Energy from operating the Fourmile Fork Surface Mine in such a manner as will result in further violations the condition of WV/NPDES Permit WV1015176 that prohibits discharges that violate water quality standards;

(21).   Ordering Kanawha Energy to immediately comply with all terms and conditions

of WV/NPDES Permit WV1015176;

(22).   Ordering Kanawha Energy to immediately comply with all terms and conditions of WVSCMRA Permit S300296 and all performance standards under SMCRA and WVSCMRA;

(23).   Ordering Defendants to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

(24).   Ordering Defendants to conduct monitoring and sampling to determine the environmental effects of their violations, to remedy and repair environmental contamination and/or degradation caused by their violations, and restore the environment to its prior uncontaminated condition;

(25).   Awarding Plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

(26).   Granting other such relief as the Court deems just and proper.

Respectfully submitted,

/s/ Derek O. Teaney
DEREK O. TEANEY (W.Va. Bar No. 10223)
JOSEPH M. LOVETT (W.Va. Bar No. 6926)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 793-9007

Counsel for Plaintiffs